UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NIGEL HANSEN § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. _____ |
| BMW FINANCIAL SERVICES NA, LLC, § | |
| EQUIFAX INFORMATION SERVICES LLC, § | |
| EXPERIAN INFORMATION SOLUTIONS, § | |
| INC., and TRANS UNION LLC § | **JURY DEMAND REQUESTED** |
| § | |
| Defendants. § | |

## PLAINTIFF NIGEL HANSEN'S ORIGINAL COMPLAINT

NIGEL HANSEN ("Plaintiff") brings this action, complaining of BMW FINANCIAL SERVICES NA, LLC ("BMW Financial"), EQUIFAX INFORMATION SERVICES LLC ("EQUIFAX"), EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN"), and TRANS UNION LLC ("TRANSUNION") (collectively the "Defendants"), and respectfully shows the following:

### A.   PARTIES

1.   Plaintiff Nigel Hansen is a natural person who resides in Houston, Texas.  The last three digits of Mr. Hansen's Social Security Number are 073.

2.   Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code Ann. § 392.001(1).

3.   Plaintiff has been charged with a debt (the "Consumer Debt"), for a 2018 BMW M5, Vehicle Identification Number WBSJF0C58JB282994, as defined by 15 U.S.C. § 1692a(5) and Tex. Fin. Code Ann. § 392.001(2).

4. Defendants EQUIFAX INFORMATION SERVICES LLC ("EQUIFAX"), EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN") and TRANS UNION LLC. ("TRANSUNION") are business entities doing business in the State of Texas as credit bureaus which receive negative credit information about consumers and which then publish such information in credit reports available to its subscribers.

5. Defendant EQUIFAX is a limited liability company formed under the laws of the state of Georgia that does business in Texas and may be served by serving its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6. Defendant EXPERIAN is a corporation formed under the laws of the state of Ohio that does business in Texas and may be served by serving its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

7. Defendant TRANSUNION is a limited liability company formed under the laws of the state of Delaware that does business in Texas and may be served by serving its registered agent, The Prentice-Hall Corporation System, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

8. Defendant BMW FINANCIAL SERVICES NA, LLC is a limited liability company formed under the laws of the state of Delaware that does business in Texas and may be served by serving its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

9. Defendant BMW Financial is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. Defendant BMW Financial attempted to collect the Consumer Debt from Plaintiff.

11. Defendant BMW Financial regularly collects or attempts to collect debts from Consumers in Texas.

12. Defendant BMW Financial engages in interstate commerce by regularly using telephone and mail in a business whose principal purpose is the collection of debts.

13. Defendant BMW Financial Services acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, and representatives.

14. At all times material hereto, Defendant BMW Financial was acting as a debt collector in respect to the collection of Plaintiff's alleged debts.

### B. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. § 1692k.

16. This Court has supplemental jurisdiction for any state law claims under 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over BMW Financial because it has personally availed itself of the privilege and benefits of doing business in Texas, has committed in Texas the acts and omissions as alleged in this Complaint, and knew that such acts and omissions would have a substantial impact in Texas. Venue is proper in this Federal District under the provisions of 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this action occurred in this Federal District.

18. This Court has personal jurisdiction over EQUIFAX because it has personally availed itself of the privilege and benefits of doing business in Texas, has committed in Texas the acts and omissions as alleged in this Complaint, and knew that such acts and omissions would have a substantial impact in Texas. Venue is proper in this Federal District under the provisions of 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this

action occurred in this Federal District.

19. This Court has personal jurisdiction over EXPERIAN because it has personally availed itself of the privilege and benefits of doing business in Texas, has committed in Texas the acts and omissions as alleged in this Complaint, and knew that such acts and omissions would have a substantial impact in Texas. Venue is proper in this Federal District under the provisions of 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this action occurred in this Federal District.

20. This Court has personal jurisdiction over TRANSUNION because it has personally availed itself of the privilege and benefits of doing business in Texas, has committed in Texas the acts and omissions as alleged in this Complaint, and knew that such acts and omissions would have a substantial impact in Texas. Venue is proper in this Federal District under the provisions of 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this action occurred in this Federal District.

### C. FACTUAL BACKGROUND

21. Plaintiff re-alleges and incorporates by reference paragraphs 1-20 in this complaint as though fully set forth herein.

22. On or about July 2020, a criminal impersonating the Plaintiff, Nigel Hansen, fraudulently purchased a 2018 BMW M5, Vehicle Identification Number WBSJF0C58JB282994 (the "Vehicle"), with Mr. Hansen's stolen identity. From the period of July 2020 to August 2020, the criminal attempted to make vehicle purchases and open accounts with several institutions in Mr. Hansen's name including, but not limited to, Wells Fargo Bank, BBVA Compass, Bank of America, Chrysler Capital, GM Financial, Garland Motors, Garland Cadillac, TD Auto Finance,

Capital One Auto Finance, TD Finance, Wells Fargo Dealer Services, and Ally Financial. Momentum BMW (hereinafter referred to as "Momentum") was the only dealership to sell a vehicle to the criminal and BMW Financial financed the Vehicle for $117,074.88.

23. Mr. Hansen became aware that his identity was stolen to purchase the Vehicle when the police contacted his mother regarding the Vehicle being involved in a high-speed chase. On or about August 25, 2019, he contacted Momentum who misrepresented that they had video footage of Mr. Hansen buying the Vehicle. During the conversation with Momentum, Mr. Hansen first became aware that there was a confirmed purchase of the BMW reported to his credit.

24. Mr. Hansen visited Momentum to talk about the identity theft and clear the issue, but instead of listening and investigating Mr. Hansen's complaint, Momentum's manager refused to allow him access to the video Momentum claimed to have of the transaction, refused to allow Mr. Hansen to review the paperwork, and called the police. Mr. Hansen made his own police report that he was the victim of identity theft. Further, Mr. Hansen was told a Momentum employee agreed it was not him who purchased the vehicle. On or about September 14, 2020, Plaintiff mailed to BMW Financial an affidavit regarding the identity theft, the police report number, and a copy of his lease to show the inaccurate dates lived at his current address as reflected in the credit application.

25. Despite disputing the purchase and providing sworn information, Mr. Hansen was notified on or about October 2, 2020, that BMW Financial had "conducted a thorough investigation into the documentation . . . provided [and] . . . [was] not able to validate [the] claim of identity theft." Mr. Hansen soon began receiving notices from BMW Financial regarding the repossession of the Vehicle and debt owed to BMW Financial. Plaintiff presented BMW Financial with ample evidence indicating that he was not the individual that purchased the Vehicle and that he was

contesting the debt, but BMW Financial continued its collection efforts and reported a repossessed vehicle on Plaintiff's credit report on or about September 20, 2020.

26. Mr. Hansen disputed the reported information regarding the BMW with the three major credit bureaus: EXPERIAN, TRANSUNION, and EQUIFAX. Unfortunately for Mr. Hansen, EXPERIAN, TRANSUNION, and EQUIFAX all reported that BMW Financial certified that all information was accurate, and the credit lines were not removed.

27. On October 29, 2020, Mr. Hansen sent a demand letter to BMW Financial and Momentum to expunge the debt and remove all delinquent inquiries from all three credit bureaus as Plaintiff did not purchase the vehicle.

28. BMW Financial still failed to update and remove the trade lines and negative credit marks. By letter dated November 14, 2020, BMW Financial notified Mr. Hansen that the Vehicle had been sold at auction and that he still owed $38,335.51 for the Vehicle.

29. Despite Plaintiff diligently providing information to BMW Financial that he did not owe the debt, including, but not limited to: (1) incomplete and incorrect Social Security numbers; (2) incorrect cell phone number; (3) incorrect email address; (4) incorrect length of time at current address; (5) incorrect employment information, which includes a falsified paystub; (6) incorrect occupation; (7) incorrect income; (8) incorrect billing address; (9) incorrect insurance; and (10) incorrect signature.

30. BMW Financial refused to remove the charge and repossession on his credit and continued to misrepresent details and information to Mr. Hansen.

31. BMW Financial stated that a letter from Plaintiff's employer indicating the paystub used in the application was false ". . . can shortcut the need for litigation . . ."

32. On December 21, 2020, Plaintiff provided BMW Financial with a letter from Plaintiff's employer showing the paystub was fraudulent, but BMW Financial failed to correct the credit reporting.

33. On or about February 10 and 11, 2021, Mr. Hansen again disputed the alleged debt to the three major credit bureaus: EXPERIAN, EQUIFAX, and TRANSUNION. Again, Mr. Hansen received a response from the bureaus that BMW Financial reported the information as accurate so the credit bureaus would not be removing the credit line from Mr./ Hansen's credit history.

34. As a direct and proximate result of and Defendants' negligent and/or willful failure to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., Plaintiff has suffered credit and emotional damages. Due to Defendants' failure to correct the errors in Plaintiff's credit file, Plaintiff has suffered credit denials and has been forced to refrain from applying for new credit or more favorable terms for existing credit lines. Plaintiff now suffers from fear, anxiety, stress, sleeplessness, mental anguish, mild depression and/or distraction from normal life. Further, Plaintiff has been forced to refrain from applying for an apartment in Denver to relocate for work as was previously planned because of Defendants. In short, Plaintiff has been unable to live a normal life because Defendants failed to timely remove the debt and negative reporting from his credit.

35. As of the date hereof, the falsely reported debt and repossession is still being reported on all three of his credit reporting files.

### D. COUNT ONE - VIOLATION OF THE FAIR CREDIT REPORTING ACT AGAINST EQUIFAX, EXPERIAN, TRANSUNION, AND BMW FINANCIAL SERVICES

36. Plaintiff realleges paragraphs 1-34 above as if fully recited verbatim.

37. Within the past several months, Defendants willfully and/or negligently violated the provisions of the Fair Credit Reporting Act in *at least* the following respects:

   a. By willfully and negligently failing, in the preparation of the consumer report concerning Plaintiff, to follow reasonable procedures to assure maximum possible accuracy of the information in the report;

   b. By willfully and negligently failing to review all relevant information concerning Plaintiff's account provided to Defendant;

   c. By willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

   d. By willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning the Plaintiff to credit reporting agencies and other entities despite knowing that said information was inaccurate;

   e. By willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2;

   f. By willfully and negligently failing to provides subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof;

   g. By willfully and negligently changing account numbers and account number designations so as to make reinvestigation and deletion more difficult for the consumer, but in turn more lucrative for bureaus and furnishers because derogatory account information will remain on credit reports longer;

   h. By willfully and negligently failing to put a block on the identity theft account or accounts, as required by 15 U.S.C. Section 1681s-2;

   i. By willfully and negligently failing to establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency pursuant to Regulation V.12 C.F.R. § 1022.42(a);

   j. By willfully and negligently failing to correct, after receiving ample notice, information about the Plaintiff which Defendant knew, or should have known, was incomplete and/or inaccurate;

    k.    By willfully and negligently failing to correct and/or delete the incomplete and inaccurate information in Plaintiff's file after conducting an investigation;

    l.    By willfully and negligently failing to conduct an adequate investigation of Plaintiff's complaint, and by willfully and negligently failing to implement corrective actions once the outcome of such investigations were known, or should have been known, to the Defendant; and

    m.    By willfully and negligently failing to provide such information to the credit bureaus indicating the full nature, reasons and extent of Plaintiff's dispute, and thus causing the credit report to the credit bureaus to be inaccurate and incomplete.

38.    Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing the injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendants are liable to compensate Plaintiff for the full statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other relief permitted by law.

### E.  COUNT TWO - BMW FINANCIAL NEGLIGENTLY VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

39.    Plaintiff realleges paragraphs 1-37 above as if fully recited verbatim.

40.    The Federal Fair Debt Collection Practices Act (the "FDCPA"), pursuant to 15 U.S.C. 1692d, prohibits a debt collection from engaging "in any conduct the natural consequence is to harass, oppress, or abuse any person in connection with the collection of a debt."

    a.    **Violations of FDCPA § 1692d**

41.    Defendant BMW Financial violated § 1692d through the nature of its collection efforts directed towards Plaintiff. Despite Plaintiff having no obligation on the debt, BMW Financial attempted to collect the debt from Plaintiff. BMW Financial harassed, oppressed and abused Plaintiff via BMW Financials' efforts to collect a debt from him which he does not owe.

### b. Violations of FDCPA § 1692e

42. The FDCPA, pursuant to 15 U.S.C. § 1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

43. In addition, this section enumerates specific violations, such as:

> "The false representation of . . .the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2)(A)

> "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10).

44. Defendant BMW Financial violated § 1692e, e(2), and (10) when it attempted to collect upon a debt which Plaintiff does not owe. It was a false representation as to the character of the debt to suggest that Plaintiff owed the debt, even though he did not. Plaintiff was harmed by BMW Financial's false representations as he experienced emotional distress and aggravation dealing with a debt collector attempting to collect a debt he does not owe.

### c. Violations of FDCPA § 1692f

45. The FDCPA, pursuant to 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(1) further prohibits "[a]ttempts to collect any amount not authorized by the agreement creating the debt or permitted by law."

46. BMW Financial violated § 1692f and f(1) when it unfairly and unconscionably attempted to collect on a debt that Plaintiff does not owe. BMW Financial's collection efforts were unlawful and unsupported by any contractual provision, underscoring BMW Financial's unfair and unconscionable attempts to collect a debt from an innocent consumer.

### F. COUNT THREE –BMW FINANCIAL VIOLATED THE TEXAS DEBT COLLECTION ACT

47. Plaintiff realleges paragraphs 1-45 above as if fully recited verbatim.

48. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

49. BMW Financial is a "debt collector" and a "third party debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

50. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

   a. **Violations of TDCA § 392.304**

51. The TDCA, pursuant to Tex. Fin. Code Ann § 392.304(8), prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt . . ." The TDCA, under Tex. Fin. Code Ann. § 392.304(19), further prohibits a debt collector from "using any other false representation or deceptive means to collect a debt . . . ."

52. BMW Financial violated the above referenced portions of the TDCA when it attempted to collect upon a debt which Plaintiff does not owe. Through its collection letters, BMW Financial misrepresented the character, extent, and amount of Plaintiff's purported obligation on the subject debt. Such conduct similarly constitutes the utilization of false representations and deceptive means made during BMW Financial's attempts to collect upon a debt.

### G. DEMAND FOR JURY

53. Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with the Federal Rule of Civil Procedure 38, a trial by jury on all issues permitted by law.

## **PRAYER**

WHEREFORE, Plaintiff, Nigel Hansen, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. For general and special damages;

b. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

c. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

d. Awarding Plaintiff actual damages, in an amount to be determined at trial, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2) and 15 U.S.C. § 1692k(a)(1);

e. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

f. Awarding Plaintiff costs and reasonable attorneys' fees, pursuant to Tex. Fin. Code Ann. § 392.403(b) and 15 U.S.C. § 1692k(a)(3); and

g. Awarding any other relief as to this Honorable Court deems just and appropriate.

        Respectfully submitted,

        **HOOVER SLOVACEK LLP**

By:   /s/ *Courtney E. Palm*
        COURTNEY E. PALM
        State Bar No. 24041641
        SDOT No. 36917
        COLBY M. BINFORD
        State Bar No. 24109645
        SDOT No. 3651174
        Galleria Tower II
        5051 Westheimer, Suite 1200
        Houston, Texas 77056
        Telephone: (713) 977-8686
        Facsimile: (713) 977-5395
        palm@hooverslovacek.com
        binford@hooverslovacek.com

**OF COUNSEL:**

**HOOVER SLOVACEK LLP**
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
(713) 977-8686 Telephone
(713) 977-5395  Facsimile

**ATTORNEYS FOR PLAINTIFF
NIGEL HANSEN**